Elizabeth A. Falcone CA Bar No. 219084
elizabeth.falcone@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:  503-552-2140
Facsimile:   503-224-4518

Robert Vorhees CA Bar No. 297936
robert.vorhees@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Park Tower, Fifteenth Floor
695 Town Center Drive
Costa Mesa, CA  92626
Telephone:  714-800-7900
Facsimile:   714-754-1298

Attorneys for Defendant
United Parcel Service, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| REBECCA ORR,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UNITED PARCEL SERVICE, INC., a corporation; and DOES 1-100, inclusive,<br><br>　　　　Defendants. | Case No. 5:24-cv-00421 SSS (SPx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY PROCEEDINGS**<br><br>Date:　　　August 23, 2024<br>Time:　　　2:00 p.m.<br>Courtroom:　2<br><br>[Filed concurrently with Notice of Motion and Motion to Compel Arbitration, Declarations of Robert R. Vorhees and Kimberley Gross and [Proposed] Order]<br><br>Complaint Filed: January 18, 2024<br>Trial Date:　　　None Set<br>District Judge:　Hon. Sunshine Suzanne Sykes<br>Magistrate Judge: Hon. Sheri Pym |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Rebecca Orr ("Orr") agreed to private arbitration as the sole and exclusive means for resolving disputes with Defendant United Parcel Service, Inc. ("UPS"). She also agreed to do so on an individual basis, and further agreed to delegate to the Arbitrator the "exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability, or waiver of" the arbitration agreement. She now alleges several wage and hour claims on an individual and class-wide basis against UPS. Orr's agreement to arbitrate on an individual basis is valid and binding, and no defenses to enforcement exist. Because Orr agreed to resolve all disputes in individual arbitration, UPS moves the Court for an order compelling individual arbitration of Orr's claims and staying proceedings pending completion of the arbitration. The Court – consistent with decisions of other courts compelling arbitration pursuant to the same agreement, *see, e.g., Rizvanovic v. United Parcel Serv., Inc.*, No. 21-CV-01278, 2023 WL 346800, at *8 (E.D. Cal. Jan. 20, 2023); *Thistlewaite v. United Parcel Serv., Inc.,* No. 22-CV-01753, 2022 WL 17578868, at *6 (C.D. Cal. Dec. 7, 2022) – should grant UPS's motion.

## II. RELEVANT BACKGROUND

UPS delivers packages and documents worldwide. During the holiday season, UPS hires "Seasonal Support Drivers" or "SSDs" in some areas on a temporary basis to deal with increased holiday volume. In their role, SSDs receive packages from UPS's permanent drivers and deliver those packages locally using the SSDs' personal vehicles. Orr worked for UPS as an SSD from November 20, 2023, through December 29, 2023.

When UPS hired Orr, she agreed to an "Arbitration Agreement / Peak Season Hiring Agreement" ("Agreement"). (Declaration of Kimberley Gross ¶¶ 2-5, Ex. A [hereinafter "Gross Decl."]).) In the Agreement, Orr and UPS agreed to arbitrate,

subject to some inapplicable exceptions, "all claims or controversies" between them "that otherwise would be resolved in a court of law or a forum other than arbitration," including, among other things, all claims for "compensation" and "retaliation." (Gross Decl. Ex. ¶ 5, Ex. A.) Orr and UPS further agreed "to bring any claim on an individual basis and not on a class and/or collective action basis." (*Id.*) Finally, while assigning the question of the validity of the class action waiver to the Court, UPS and Orr agreed that otherwise, subject to some inapplicable exceptions, "the Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability, or waiver of" the Agreement (the "Delegation Clause"). (*Id.*)

Despite her agreement to arbitrate, Orr filed a putative class action on January 23, 2024. (ECF No. 1.) Orr alleges claims for: (i) failure to pay reporting time pay; (ii) failure to timely pay wages; (iii) failure to provide accurate itemized wage statements; (iv) unfair business practices; and (v) retaliation. (*Id.*) When UPS's counsel asked Orr's counsel if she would submit her claims to arbitration Orr's counsel stated that Orr would not do so, necessitating UPS filing this motion. (Declaration of Robert Vorhees [hereinafter "Vorhees Decl."], ¶¶ 2-3, Ex. A.)

### III. THE COURT SHOULD COMPEL ARBITRATION UNDER THE FAA & CAA

#### A. Orr & UPS Have a Binding Arbitration Agreement

Arbitration under federal law is governed by the Federal Arbitration Act ("FAA"), while arbitration under California law is governed by the California Arbitration Act ("CAA"). Both the FAA and CAA make private agreements to arbitrate valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. 9 U.S.C. § 2; Cal. Code Civ. P. § 1281. Both put the burden of proving the existence of an arbitration agreement on the party seeking to arbitrate, and both put the burden of proving any defense against arbitration on the party opposing arbitration. *See Nielsen Contracting, Inc. v. Applied*

*Underwriters, Inc.*, 22 Cal. App. 5th 1096, 1106 (Cal. App. 2018). Both reflect public policies "strongly favor[ing] arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *Mendoza v. Trans Valley Transp.* 75 Cal.App.5th 748, 763 (Cal. App. 2022).[1]

In deciding whether to compel arbitration under both the FAA and CAA, courts are directed to first look to whether there is a valid contract to arbitrate under applicable state law. *E.g.*, *Kilgore v. KeyBank Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (*en banc*); *Mendez v. Mid-Wilshire Health Care Ctr.*, 220 Cal. App. 4th 534, 541 (Cal. App. 2013). Under California law, the essential elements of a contract are "(1) [p]arties capable of contracting; (2) [t]heir consent; (3) [a] lawful object; and (4) a sufficient cause or consideration." Cal. Civ. Code § 1550; *see also Maharaj v. Charter Commc'ns, Inc.*, No. 20-cv-00064, 2021 WL 5014352, at *5 (S.D. Cal. Oct. 27, 2021). All elements are present here:

- Orr was over 18 at the time of the Agreement and represented herself as having no disabilities and as being able to perform the essential functions of the SSD position without accommodations, demonstrating her competence to contract. (Gross Decl., ¶ 6.)
- Orr consented to the Agreement electronically, satisfying the consent element. (*Id.,* at ¶¶ 4-5, Ex. A.)
- A contract to arbitrate is lawful, satisfying the third element. *E.g.*, *Maharaj v. Charter Commc'ns, Inc.*, No. 20-CV-64, 2021 WL 5014352, at *5 (S.D. Cal.

---

[1] Orr may claim that the Agreement falls outside of the FAA because of the FAA's interstate commerce exception. UPS disagrees, and maintains that decisions finding "last mile" delivery drivers fall within this exception are incompatible with the Supreme Court's decision in *Sw. Airlines Co. v. Saxon*, 596 U.S. 450 (2022), regarding the scope of that exemption. However, since the FAA and CAA are the same in all relevant respects, the Court need not decide whether the interstate commerce exemption applies. The "one major difference between the FAA and the CAA" is that "the CAA obviously does not prevent [California's] Legislature from selectively prohibiting arbitration in certain areas." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 98 (Cal. 2000). However, this distinction is irrelevant to the question before the Court because (a) the Delegation Clause assigns the question of validity to the Arbitrator and (b) nothing in California law makes workplace arbitration agreements unenforceable.

1     Oct. 27, 2021).

2 - UPS's employment of Orr, its agreement to arbitrate employment-related
3     disputes, and its payment of Orr's compensation all constituted sufficient
4     consideration to create a contract between the parties. *See Circuit City Stores,*
5     *Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's "promise to be
6     bound by the arbitration process itself serves as adequate consideration");
7     *Holman v. Bath & Body Works, LLC*, No. 1:20-cv-01603, 2021 WL 5826468,
8     at *5 (E.D. Cal. Dec. 8, 2021) (valid consideration where plaintiff accepted
9     employer's offer in exchange for agreement to arbitrate, and plaintiff continued
10    to work for employer afterward).

11     Accordingly, under both the FAA and CAA, UPS and Orr have entered into a valid contract to arbitrate.

### B. The Court Should Compel Arbitration so the Arbitrator Can Decide Questions Regarding the Validity and Scope of the Agreement

Since the Agreement is valid under California law, both the FAA and CAA require the Court to enforce it according to its terms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (under the FAA, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms"); *Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal. 4th 1334, 1358 (Cal. 2008) (discussing the CAA's "fundamentally contractual nature" and "the attendant requirement that arbitration shall proceed *as the parties themselves have agreed*"). One of those terms is the Delegation Clause providing the Arbitrator with "exclusive authority to resolve any dispute relating to the validity, applicability, enforceability, unconscionability, or waiver of" the Agreement. (Gross Decl. Ex. ¶ 5, Ex. A.)

"Where an express delegation clause exists, unless a party opposing enforcement of the agreement specifically challenges the delegation clause, courts must treat it as valid, leaving any challenge to the validity of the agreement as a whole for the arbitrator." *Rizvanovic*, 2023 WL 346800 at *8; *see also Ratajesak v. New

*Prime, Inc.*, No. 18-CV-9396, 2019 WL 1771659, at *6 (C.D. Cal. March 20, 2019) (a "clear and unmistakable evidence of delegation must be enforced"); *Malone v. Superior Court*, 226 Cal.App.4th 1551, 1571 (Cal. App. 2014) ("The delegation clause is not (unconscionable, and the trial court therefore did not err in granting the motion to compel arbitration to permit the arbitrator to resolve Malone's challenges to the validity and enforceability of the arbitration agreement as a whole."). The "clear and unmistakable … text of the [A]greement," providing "that the arbitrator, not the court, shall resolve questions of arbitrability," is "express." *Rizvanovic*, 2023 WL 346800 at *8. Accordingly, if Orr wants to raise any defenses to the Agreement, the appropriate place for her to do so is with the Arbitrator. *See id.*; *Ratajesak*, 2019 WL 1771659 at *7 ("Plaintiffs can (and should) raise their challenges [based on unconscionability] before the arbitrator."); *Malone*, 226 Cal.App.4th at 1571. Therefore, despite any defenses Orr might raise, the Court should compel this action to arbitration, where the Arbitrator can address Orr's defenses to arbitration, if any.

### C. Any Defenses Would Fail

In the event Orr tries to attack the Delegation Clause, or even the Agreement as a whole, as being unenforceable, Orr would fail.

#### 1. The Delegation Clause and Agreement Are Not Unconscionable

UPS anticipates Plaintiff may argue the Delegation Clause and/or Agreement as a whole is/are unconscionable. Neither are.

Unconscionability has both a procedural and a substantive element. For an agreement to be unenforceable, it must be both procedurally and substantively unconscionable. *A&M Produce Co. v. FMC Corp.* 135 Cal.App.3d 473, 486-487 (Cal. App. 1982); *Stirlen v. Supercuts, Inc.*, 51 Cal.App.4th 1519, 1533 (Cal. App. 1997). The Agreement here is, at most, minimally procedurally unconscionable, and is not substantively unconscionable. It is therefore valid and enforceable.

Determining whether an agreement is procedurally unconscionable requires an analysis of two factors: "oppression" and "surprise." *A&M Produce,* 135 Cal.App.3d

at 486. "Oppression" occurs where there is an inequality of bargaining power, resulting in no real negotiation, and an "absence of meaningful choice." *Id.* "Surprise" exists where the terms "are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.*

There is little to no "oppression" surrounding the Agreement. As both federal and California courts have held, "there often will be unequal bargaining power between employers and employees," but "mere inequality in bargaining power" does not render an agreement unenforceable. *Gilmer v. Interstate/Johnson Lane Corp.* 500 U.S. 20, 33 (1991); *Radcliff v. San Diego Gas & Elec. Co.*, No. 20-CV-1555, 2020 WL 6395677, at *4 (S.D. Cal. Nov. 2, 2020) ("cases uniformly agree that a compulsory predispute arbitration agreement is not rendered unenforceable just because it is required as a condition of employment or offered on a 'take it or leave it' basis") (citation omitted); *Lagatree v. Luce Forward Hamilton & Scripps* 74 Cal.App.4th 1105, 1122-1123 (Cal. App. 2002). Even if UPS presented the Agreement on a "take it or leave it basis," any procedural unconscionability would be "fairly low level." *Alvarez v. Altamed Health Services Corp.* 60 Cal.App.5th 572, 591 (Cal. App. 2021).

There is no "surprise" whatsoever. The Agreement is clear and legible with an unmistakable title notifying the reader it is an arbitration agreement. (Gross Decl. Ex. ¶ 5, Ex. A.) The Agreement clearly and precisely set forth its terms. *Id.* Orr clicked a box just under the Agreement that said "I agree." (Gross Decl. Ex. ¶¶ 4-5, Ex. A.) *Id.* UPS gave Orr every opportunity to know what she was agreeing to.

Because the level of procedural unconscionability here is low, Orr could only avoid arbitration if there is a high degree of substantive unconscionability. *Serpa v. California Surety Investigations, Inc.* 215 Cal.App.4th 695, 704 (Cal. App. 2013) ("the degree of procedural unconscionability of an adhesion agreement is low, and the agreement will be enforceable unless the degree of substantive unconscionability is high"); *Poublon v. C.H. Robinson Co*. 846 F.3d 1251, 1261 (9th Cir. 2017). But the Delegation Clause and Agreement are not substantively unconscionable in any way.

Substantive unconscionability focuses on "overly harsh" or "one-sided" terms or results. *A&M Produce, supra,* 135 Cal.App.3d at 487. Substantive unconscionability exists only where an agreement is so harsh or one-sided that it shocks the conscience and lacks even a modicum of bilaterality. *Abramson v. Juniper Networks, Inc.* 115 Cal.App.4th 638, 656-57 (Cal. App. 2004). "[T]he paramount consideration in assessing conscionability is mutuality." (*Id.*)

The Delegation Clause and Agreement are mutual and bilateral in every way. Both UPS and Orr agreed to give the Arbitrator jurisdiction to determine arbitrability. (Gross Decl. Ex. ¶ 5, Ex. A.) Both UPS and Orr agreed to arbitrate all claims against the other, subject only to certain mutual exclusions. (*Id.*) Because of this mutuality, neither the Delegation Clause nor the Agreement are unconscionable. *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App.4th 1199 (Cal. App. 1998) (no substantive unconscionability where agreement applied equally to employer and employee).

The Agreement applies equally to both UPS and Orr. Considering public policy strongly favors arbitration, one could not say the Agreement is harsh or one-sided. Orr cannot establish substantive unconscionability. Accordingly, the Agreement and Delegation Clause are not unconscionable, and the Court should enforce them.

### 2. Section 432.6/AB 51 Presents No Bar to Arbitration

Orr may also argue that California Labor Code § 432.6, sometimes referred to as AB 51, is an obstacle to enforcement of either the Delegation Clause or Arbitration Agreement as a whole. Orr would be wrong for at least three reasons:

*First*, Labor Code § 432.6(a) does not purport to invalidate any arbitration agreement or any provisions therein. As the Ninth Circuit explained in *Chamber of Com. of the United States of America v. Bonta*, 62 F.4th 473 (9th Cir. 2023), all § 432.6 did is impose civil and criminal penalties on employers who mandated arbitration as a condition of employment, while at the same time § 432.6 "d[id] not affect the enforceability of the resultant agreement to arbitrate." *Id.* at 480. "This resulted in the oddity that an employer subject to criminal prosecution for requiring an employee to

enter into an arbitration agreement could nevertheless enforce that agreement once it was executed." *Id*. Put simply, Labor Code § 432.6 has nothing to say about the enforceability of arbitration agreements and delegation clauses.

***Second***, if Orr were to argue that § 432.6 invalidates the Agreement, which is not so, that would be a question for the Arbitrator because of the Delegation Clause. *See Rizvanovic*, 2023 WL 346800 at *8 ("Where an express delegation clause exists, unless a party opposing enforcement of the agreement specifically challenges the delegation clause, courts must treat it as valid, leaving any challenge to the validity of the agreement as a whole for the arbitrator.").

***Third***, as the Ninth Circuit held in *Bonta*, "the FAA preempts AB 51 *as a whole* to the extent it applies to arbitration agreements." *Bonta*, 62 F.4th at 490 (emphasis added). This is because § 432.6 is an obstacle to the FAA's "national policy favoring arbitration" and the "liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id*. at 483. In particular, "the penalties imposed by AB 51 inhibit an employer's willingness to create an arbitration contract with employees," and thereby "is antithetical to the FAA's liberal federal policy favoring arbitration agreements." *Id*. at 487. Accordingly, § 432.6 is irrelevant because it is preempted "as a whole" by the FAA. *Id*. at 490.

For these reasons, § 432.6 presents no bar to enforcement of the Agreement or Delegation Clause, and the Court should accordingly compel Plaintiff to arbitrate.

## IV.   THE COURT SHOULD STAY THESE PROCEEDINGS PENDING ARBITRATION

Both the FAA and CAA provide for a stay to continue until arbitration concludes. 9 U.S.C. § 3; Cal. Code of Civ. Proc. § 1281.4. Where there is a valid arbitration agreement, the appropriate order is to compel arbitration of the relevant claims and stay other proceedings. *See e.g.*, *McGill v. Citibank, N.A.* 2 Cal. 5th 945, 966 (Cal. 2017) (staying inarbitrable claims pending arbitration); *Association for Los Angeles Deputy Sheriffs v. County of Los Angeles* 234 Cal.App.4th 459, 468 (Cal. App.

2015). Where the issues subject to litigation "might overlap those that are subject to arbitration …, the trial court *must* order an appropriate stay of trial court proceedings." *Franco v. Arakelian Enterprises, Inc.* 234 Cal.App.4th 947, 966 (Cal App. 2015), *as modified* (Mar. 11, 2015) (emphasis added) (citing Cal. Code Civ. Proc. § 1281.4). "The stay's purpose is to preserve the status quo until the arbitration is resolved, preventing any continuing trial court proceedings from disrupting and rendering ineffective the arbitrator's jurisdiction to decide the issues that are subject to arbitration." (*Id.*) Therefore, the Court should stay this action pending arbitration.

## V. CONCLUSION

For the foregoing reasons, UPS requests the Court enter an order (i) compelling Orr to arbitrate his claims and (ii) staying proceedings pending the completion of arbitration.

DATED: July 26, 2024

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: */s/ Robert Vorhees*
Elizabeth A. Falcone
Robert Vorhees
Attorneys for Defendant
United Parcel Service, Inc.

# PROOF OF SERVICE
*Rebecca Orr v. United Parcel Service, Inc., et al.*
Case No. 5:24-cv-00421 SSS (SPx)

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the County of Orange in the office of a member of the bar of this court at whose direction the service was made. My business address is 695 Town Center Drive, Suite 1500, Costa Mesa, CA 92626.

On July 26, 2024, I served the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND TO STAY PROCEEDINGS**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed as follows:

☐ **BY MAIL:** I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐ **BY MAIL:** I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at Park Tower, Fifteenth Floor, 695 Town Center Drive, Costa Mesa, CA 92626.

☐ **BY OVERNIGHT DELIVERY:** I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., Costa Mesa, California. I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐ **BY MESSENGER SERVICE:** (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **BY FACSIMILE:** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

☐ the written confirmation of counsel in this action:
☐ [Federal Court] the written confirmation of counsel in this action and order of the court:

☒ **BY CM/ECF:** With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the parties and counsel of record who are registered with the Court's CM/ECF System.

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐ **(Federal)** I declare that I am a **member** of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 26, 2024 at Costa Mesa, California.

*/s/ Susan Susebach*
Susan Susebach

# SERVICE LIST

Robert J. Wassermann, Esq.  
Jenny D. Baysinger, Esq.  
Vladimir J. Kozina, Esq.  
MAYALL HURLEY P.C.  
112 S. Church St.  
Lodi, CA  95240  
Telephone:  209-477-3833  
rwassermann@mayallaw.com  
jbaysinger@mayallaw.com  
vjkozina@mayallaw.com  

Attorneys for Plaintiff  
Rebecca Orr